UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON MICHAEL JUDD,<br><br>             Petitioner,<br><br>vs.<br><br>ANTHONY LAMARQUE, Warden,<br><br>             Respondent. | No. 2:02-cv–1083-JKS<br><br>MEMORANDUM DECISION |

   Jason Anthony Judd has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  Petitioner is currently serving a sentence of 15 years to life, plus a one year enhancement in the California State Prison at Corcoran, California.  Petitioner was charged with murder, CAL. PEN. CODE § 187, using a deadly weapon (knife) in the commission of the murder, CAL. PEN. CODE. § 12022(b), and to have committed the murder while released from custody on a pending offense, CAL PEN CODE §§ 667.5(b), 12022.1(b).   Petitioner was found guilty after a jury trial of murder in the second degree and the jury found the allegation that he used a knife to be true.[1/]  Petitioner appealed his conviction to the California Court of Appeal, which affirmed his conviction on January 25, 2001 in an unpublished written opinion.  The California Supreme Court summarily denied review on April 11, 2001.  Petitioner did not file a petition for *certiorari* with the U.S. Supreme Court and his conviction became final 90 days later, July 10, 2001.  *See Wixom v Washington*, 264 F.3d 894, 897 (9th Cir.2001).  On April 17, 2002, Petitioner filed a petition for habeas corpus in the Sacramento Superior Court, which petition was denied in a written opinion on May 10, 2002.  On May 16, 2002, Petitioner filed his original petition for

---

   [1/] Petitioner was initially sentenced to two one-year enhancements.  However, on direct appeal the California Court of Appeal determined that the enhancement based on § 12022.1(b) was improperly applied and upon remand the sentence amended *nunc pro tunc* eliminating the second enhancement.  That matter is not before this Court.

habeas corpus in this Court.[2/]  Petitioner subsequently requested that this court "stay and abey" his petition while he exhausted his unexhausted claims before the California Supreme Court.  On August 28, 2002, this Court granted that request. On September 20, 2002, Petitioner filed a habeas petition with the California Court of Appeal, which was summarily denied without opinion or citation to authority on September 26, 2002.  On March 4, 2003, Petitioner filed his petition for a writ of habeas corpus in the California Supreme Court, which petition was summarily denied without opinion or citation to authority on October 15, 2003.[3/]  On January 20, 2004, Petitioner filed his second amended petition to which Respondent was ordered to respond. Respondent filed an answer to the amended petition on May 5, 2004.  Petitioner retained counsel who requested a second "stay and abey" order, which request was unopposed by Respondent and granted on June 29, 2004.  Petitioner filed his second petition for a writ of habeas corpus with the California Supreme Court on August 27, 2004, which  was denied with citation to "*In re Clark* (1993) 5 Cal.4th 750."  Petitioner then filed his Third Amended Petition, to which Respondent answered and Petitioner filed his traverse.

The history of this case and the facts are well known to the parties and are set forth in detail in the opinion of the California Court of Appeals.  In the interests of brevity they are not repeated here.

Petitioner raises four claims in his Third Amended Petition. Claim 1: Ineffective assistance of trial counsel for failure to request a jury instruction under the California Home Protection Bill of Rights, CAL. PEN. CODE § 198.5.  Claim 2: Ineffective assistance of trial counsel for failure to adequately investigate the condition of a screen door.  Claim 3: Ineffective assistance of appellate counsel for failure to raise the issue of failure to instruct under the California Home Protection Bill of rights in the petition for review filed with the California

---

[2/] The petition bears a filing date of May 20, 2002.  However, it bears a signature date of May 16, 2002.  Under the "mailbox rule," in the absence of evidence to the contrary, the Court assumes the petition was delivered to the prison authorities on the date it bears and treats the petition as having been filed as of that date.

[3/] Under California procedure, each successive habeas petition in the Court of Appeals and the Supreme Court is a new petition.  For the purposes of this decision, the Court refers to the first round habeas petitions as the "first" and the second round habeas petition as the "second" petition.

Supreme Court.  Claim 4: Denial of due process because the jury instructions improperly removed intentional killing as a basis for the lesser included offense of voluntary manslaughter.

In his direct appeal Petitioner raised both the argument of ineffective counsel for failure to request a jury instruction under the California Home Protection Bill of Rights (Claim 1) and the improper instructing of the jury on voluntary manslaughter (Claim 4).  In his first state habeas petition, Petitioner raised the issue of ineffective trial counsel for failure to investigate the condition of a screen door (Claim 2) and again raised the issue of the prejudicial effect of the erroneous jury instruction on voluntary manslaughter (Claim 4).  In his second state habeas petition he raised for the first time his ineffective appellate counsel claim (Claim 3).

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court, *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004), which in this case was that of the California Court of Appeal on the direct appeal and the Sacramento Superior Court on the first state habeas petition.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir.2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir.2005) (per curiam).

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief. This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (Citations and internal quotation marks omitted)).

<u>Ineffective Assistance of Counsel</u>.

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

<u>Claim 1 (Failure to request instruction on California Home Protection Bill of Rights)</u>.

On this point, the California Court of Appeal held:

> Defendant's next claim of instructional error is that the trial court prejudicially erred in failing to, sua sponte, instruct the jury of the presumption that the use of deadly force by a resident against an intruder is with "a reasonable fear of imminent peril of death or great bodily injury . . . ." ( § 198.5)[9] Concomitantly, defendant contends defense counsel's failure to request this instruction was ineffective assistance of counsel. Neither of these contentions has merit, as defendant was not entitled to this instruction.

---

[9]   Section 198.5 provides:

"Any person using force intended or likely to cause death or great bodily injury within his or her residence shall be presumed to have held a reasonable fear of imminent peril of death or great bodily injury to self, family, or a member of the household when that force is used against another person, not a member of the family or household, who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using the force knew or had reason to believe that an unlawful and forcible entry occurred. [¶] As used in this section, great bodily injury means a significant or substantial physical injury."

"The trial court has a sua sponte obligation to instruct the jury on general principles of law relevant to the issues of the case. [Citation.] These are usually described as those which are 'commonly or closely and openly connected to the facts before the court and that are necessary for the jury's understanding of the case. [Citations].'" (*People v. Silvey* (1997) 58 Cal.App.4th 1320, 1327, internal citations omitted.)

In this case, we find there was neither a forcible entry into a residence, nor the use of deadly force within that residence. Thus "section 198.5 was not a principle of law which can be so described." (*Silvey, supra*, 58 Cal.App.4th at p. 1327.)

Section 198.5 "creates a rebuttable presumption that a residential occupant has a reasonable fear of death or great bodily injury when he or she uses deadly force against an unlawful and forcible intruder into the residence." (*People v. Brown* (1992) 6 Cal.App.4th 1489, 1494.) To apply this presumption there must be: "an unlawful and forcible entry into a residence; the entry must be by someone who is not a member of the family or the household; the residential occupant must have used 'deadly' force . . . against the victim within the residence; and finally, the residential occupant must have had knowledge of the unlawful and forcible entry.' (*Brown, supra*, 6 Cal.App.4th at pp. 1494-1495.)

Defendant contends "there was substantial evidence that appellant stabbed Hinzman when Hinzman punched appellant, who was standing just inside his front door." However, where defendant was standing is not dispositive. There must also be a forcible entry into the residence and the use of deadly force by defendant must be within the residence.

The only arguable evidence of an entry into defendant's residence is the disputed testimony that Hinzman punched defendant while defendant was standing in his doorway.

Defendant relies on the law of burglary to argue Hinzman entered the residence by punching defendant, because his "hand at a minimum violated the airspace between the screen door and the [front] door . . . ." However, even if we agreed that Hinzman's punch constituted an entry, section 198.5 requires more.

"Both the subject of section 198.5 (the protection of habitation and occupancy) and the requirement that *the force be used within a residence* into which a '*forcible entry* occurred' signify that the ordinary law of burglary does *not* define the circumstances of entry . . . . 'Forcibly' is used to modify 'enters' and not to signify an intended use of force against the occupant." (*Brown, supra,* 6 Cal.App.4th at p. 1500, emphasis added (Blease, J. conc.))

Here, to the extent force was used, it was used against the occupant, not to gain entry into the residence. Given the subject and purposes of section 198.5, we

      decline to hold that a hand "violating the airspace" of a doorway, from an unenclosed porch, is a forcible entry entitling a defendant to the presumption.

      Further, even if we were to construe Hinzman's punch as a forcible entry, under this same logic we could not construe the use of deadly force as occurring within the residence. The evidence is undisputed, defendant reached across the threshold, onto the unenclosed porch, to stab Hinzman in the chest. Thus, defendant's use of deadly force did not occur *within* the residence.

      Accordingly, defendant was not entitled to an instruction under section 198.5. (*Silvey, supra*, 58 Cal.App.4th at p. 1328; *People v. Curtis* (1994) 30 Cal.App.4th 1337, 1361-1362; *Brown, supra*, 6 Cal.App.4th at p. 1496.) Since he was not entitled to the instruction, there was no sua sponte duty to give it. "[T]o require the trial court to have determined the instruction was necessary on the facts actually before it would require a prescience not previously attributed to the mortal bench." (*Silvey, supra*, 58 Cal .App.4th at pp. 1326-1328.)

      Similarly, the failure to request an instruction to which defendant was not entitled cannot be ineffective assistance of counsel. (*Id*. at p. 1329.)

How, if Petitioner was not entitled to an instruction under California law, a holding that this Court must accept, counsel could possibly be ineffective for failing to raise the issue escapes any rational explanation.[4/]  If the instruction was not proper, the failure to request it be given can

---

[4/] Whether the failure to instruct on the presumption identified in CAL. PEN CODE §198.5 could ever be prejudicial and therefore the failure to give such an instruction *sua sponte* prejudicial error or for a defense attorney to request it ineffective assistance of counsel depends upon the legal effect of such a presumption under California law.  In other words does the presumption if applicable change in some legal way the relationship between the prosecution and defense where self defense is in issue.  The State of California could, without violating the federal constitution, have placed the burden of proving self defense and defense of habitation on the defendant by a preponderance of the evidence. *See e.g. Martin v. Ohio*, 480 U.S. 228 (1987); *see also Dixon v. United  States,* 548 U.S. ___, 126 S.Ct. 2437 (2006) (duress).  It does not appear that California has done so. *See People v. Neidinger*, 146 P.3d 502 (Cal.2006) (distinguishing between those "defenses" that the defendant must prove beyond reasonable doubt and those defenses where the  defendant's burden is merely to point to substantial evidence  in the record from which a jury acting reasonably could infer a reasonable doubt at which point an instruction on the defense is required and the jury is told that  the burden is on the government to disprove  the defense beyond reasonable doubt as part of its burden of proving guilt beyond reasonable doubt.)  If California required defendants asserting self defense to prove the defense by a preponderance of the evidence, then the § 198.5 presumption would assist the defendant in meeting that burden and serve a useful purpose and its omission might prejudice the defendant.  It seems clear, however, that California treats self defense and defense of habitation as in the latter category defenses which the government must disprove beyond reasonable doubt and this burden does not depend upon the § 198.5 presumption. *See e.g. People v. Silvey*, 68 Cal.Rptr.2d 681 (Cal.App.1997); *People v. Owen*, 277 Cal.Rptr. 732 (Cal.App.1991),  In such cases the § 198.5 presumption would appear subsumed within the presumption
                                                                                                                                               (continued...)

be neither error nor prejudicial, the necessary prerequisites to satisfy the *Strickland-Hill* test. This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief under Claim 1.

Claim 2 (Failure to investigate condition of the screen door).

This claim was raised in the first habeas petition filed in the California courts. In disposing of that claim, the Sacramento Superior Court held:

> Petitioner's next claim is that defense trial counsel failed to investigate the screen door at the scene of the crime, to determine whether it could be opened from the outside even if it was locked. Petitioner claims that this would have been critical to his defense, in that it would have showed that the victim could have opened the screen door, and was actually the aggressor.

---

4/(...continued)
of innocence since even without the presumption the government would have to disprove "fear" beyond reasonable doubt as part of its burden of disproving self defense beyond reasonable doubt. In all such cases, the § 198.5 presumption would appear redundant and afford no "legal" benefit to the defendant over and above the presumption of innocence. This would appear to be the holding of *Owen*, which found no prejudice from failing to *sua sponte* instruct on the presumption in any case in which the jury was properly instructed on the defense of self defense and the government's burden of disproving the defense beyond reasonable doubt and consequently, an attorney's failure to request the instruction can never meet the prejudice prong of ineffective assistance of counsel. The dissent in *Silvey* and the majority in the depublished case *People v. Birt,* 13 Cal. Rptr.2d 612 (Cal.App.1992) seem to recognize that the § 198.5 presumption has no "legal effect" on the relative burdens of people and defendant since it merely requires the government to prove something the government must already prove, but apparently sees it serving a rhetorical function. In other words, like any redundant defense instruction it would serve to stress a part of the defense theory and thus enlist the judge in presenting the defendant's argument. It is difficult to see how a judge would ever err in declining to make the defense argument for it. While it appears that a California court might engage in metaphysics and for obscure reasons find prejudicial error if the presumption instruction was supported by some facts and requested by a defendant which is not the case here. It is hard to see how a court would justify such a result. It is not necessary to pursue the issue further, however, because even if a violation of California law it is hard to see how it could violate due process under the United States Constitution.

>     Petitioner, however, fails to attach any reasonably available
> documentation to support this claim, such as affidavits from persons stating
> exactly what they would have testified to regarding the screen door had they been
> called as witnesses at trial (see Harris, supra, 5 Cal.4th 813, 827 fn. 5). Further,
> even if such documentary evidence had been attached to the petition, it would not
> have shown unerring innocence and at most would have only conflicted with trial
> evidence (see Clark, supra), rendering the claim barred under Clark. The claim,
> therefore, is denied under Clark and Harris.

Respondent argues that Petitioner is procedurally barred from raising this claim before this Court. The Court agrees. This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims · · ·." *Sawyer v. Whitley,* 505 U.S. 333, 338, (1992). Under California law a habeas petitioner must attach the documentary evidence or affidavits that support the claim to the petition. *People v. Duvall*, 886 P.2d 1252, 1258 (1995); *In re Harris*, 855 P.2d 391, 397 n. 5 (1993); *In re Clark*, 855 P.2d 729, 750 n. 16 (1993). "[I]n order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default." *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir.1996) (internal quotations marks and citation omitted).

In his traverse Petitioner fails to address the procedural bar defense raised by Respondent. In particular, Petitioner does not assert that the *Clark–Harris* rule that requires the factual support for the claim be attached to the petition for habeas relief was not "clear, consistently applied, and well established" at the time of Petitioner's default and independent research by the Court has not revealed that it was not. The Court must, therefore, conclude that Petitioner is procedurally barred from raising Claim 2 before this Court by adequate, independent state law grounds.

Moreover, Petitioner's position on this issue is predicated upon the declaration of his father, which was first attached to the Second Amended Petition filed herein on January 20, 2004. Evidence that this Court is precluded from considering under controlling law. In *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11–12 (1992), the Supreme Court established the requirement that, if a petitioner failed to develop the factual basis of a claim in the state court, the petitioner must show cause and prejudice or a fundamental miscarriage of justice before relitigating the facts in a

federal habeas proceeding. In this case, Petitioner makes no showing as to the reason for the failure to present his father's declaration before the state courts; indeed, it appears that no valid reason could be shown. Petitioner would also be barred from presenting the evidence to this court by 28 U.S.C. § 2254(e)(2)(B) (adopted as part of AEDPA), which precludes an evidentiary hearing where the Petitioner fails to establish the factual basis for the claim in the state court unless "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." As discussed further below, Petitioner fails to satisfy this requirement as well. Where omission of material facts from the state court record is attributable to the Petitioner, § 2254(e)(2)(B) both codifies and narrows the *Tamayo-Reyes* standard. Accordingly, whether the Court applies the *Tamayo-Reyes* standard or the stricter standard of § 2254(e)(2)(B), the result is the same.

Even if the Court were to reach Claim 2 on the merits it would deny that claim. In the father's declaration, it is asserted that the declarant is familiar with screen doors having the same latching system as the screen door at issue in this case. He further stated that the door could be opened, even if locked, with a strong yank. The inherent problem with the declarant's testimony is that there is no indication that he at any time inspected or tested the particular door in question.[5/] In *Hart v. Gomez* the Ninth Circuit held that "[a] lawyer who fails adequately to investigate, and to introduce into evidence, [information] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." 174 F.3d 1067, 1070 (9th Cir.1999). However, the fatal flaw in Petitioner's position is that even if the jury were to have found "forcible entry," under California law as explained by the California Court of Appeal, in order for Petitioner to have been entitled to the CAL. PEN. CODE § 198.5 instruction the use of deadly force by Petitioner would also have had to have occurred inside the residence. This, according to the California Court of Appeal, it is undisputed did not occur. A finding of fact that Petitioner has not only

---

[5/] Although couched in terms of a failure to investigate, the father's declaration indicates that he was contacted by trial counsel and would be called to testify about the condition of the door; however, he was not called. The claim the is in reality one of failure to present evidence, not a failure to investigate.

MEMORANDUM DECISION
*Judd v. LaMarque*, 2:02-cv-01083-JKS           9

failed to overcome by clear and convincing evidence but has not even challenged.  Thus, the omitted evidence neither demonstrates factual innocence nor raises sufficient doubt to undermine confidence in the verdict.

This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e*., the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Petitioner is not entitled to relief under Claim 2.

<u>Claim 3 (ineffective assistance of appellate counsel)</u>.

Petitioner's third claim for relief is somewhat ambiguous.  It is unclear whether the alleged error was the failure to raise before the California Supreme Court in the petition for review of the decision of the Court of Appeal the failure to give the CAL. PEN. CODE § 198.5 instruction or an ineffective assistance of counsel claim because trial counsel failed to request the instruction.  However, irrespective of the precise nature of Petitioner's claim it is without merit.

First, Respondent asserts that this claim, which was first raised in the second state habeas petition, is procedurally barred.  In denying the petition, the California Supreme Court cited *In re Clark* [855 P.2d 729 (1993)].  Under *Clark*, as relevant to this case, a second or successive petition for habeas relief will be considered only if (1) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (2) that the petitioner is actually innocent of the crime or crimes of which the petitioner was convicted; or (3) that the petitioner was convicted or sentenced under an invalid statute. 855 P.2d at 761.  This Court must assume that the California Supreme Court determined that the relevant exceptions to a successive habeas petition were not established and this factual determination must be accepted absent clear and convincing evidence that it was incorrect. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell, supra*.  Petitioner has not met this burden.

Second, even if this Court were to reach the merits, the result would not change. Most notably, if, as the Court of Appeal held, Petitioner was not entitled to a CAL. PEN. CODE § 198.5 instruction in any event and, thus, it was not ineffective assistance of trial counsel to request it, it likewise would not constitute ineffective assistance of counsel for appellate counsel to raise it in a subsequent petition for review by the California Supreme Court. What Petitioner has failed to establish is any basis upon which he might have prevailed before the California Supreme Court. That is, Petitioner has not argued, either directly or by necessary inference, that the opinion of the California Court of Appeal that Petitioner was not entitled to a CAL. PEN. CODE § 198.5 instruction in any event was erroneous.

This Court can not say that the decision of the California Supreme Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the California Supreme Court unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable. Petitioner is not entitled to relief under Claim 3.

<u>Claim 4 (failure to properly instruct on voluntary manslaughter)</u>.

In disposing of this claim the California Court of Appeal held (footnotes in the original):

> Relying on the recent Supreme Court case *People v. Lasko* (2000) 23 Cal.4th 101, defendant contends the trial court erred in instructing the jury that voluntary manslaughter requires an intent to kill. (CALJIC No. 8.40.)[3] Defendant is correct.
>
> Lasko makes clear "intent to kill is not a necessary element of the crime of voluntary manslaughter . . . . Thus, the trial court here erred when it told the jury that voluntary manslaughter requires a finding that '[tlhe killing was done with the intent to kill.'" (23 Cal.4th at p. 111.) Nonetheless, as in *Lasko*, "[tl he error, . . . , did not prejudice defendant." *(Ibid .)*

---

[3.] CALJIC No. 8.40 as given states:

"Every person who unlawfully kills another human being without malice aforethought, but with an intent to kill, is guilty of voluntary manslaughter in violation of Penal Code section 192 (a).

> There is no malice aforethought if the killing occurred upon a sudden quarrel or heat of passion or in the actual but unreasonable belief in the necessity to defend one's self against imminent peril to life or great bodily injury.
>
> In order to prove this crime, each of the following elements must be proved:
>
> 1. A human being was killed;
>
> 2. The killing was unlawful; and
>
> 3. The killing was done with the intent to kill.
>
> A killing is unlawful, if it was not justified."

Defendant disagrees with the *Lasko* court's application of the *Watson*[4] standard, and argues we should apply the *Chapman*[5] standard and find the error reversible. Defendant ignores the fact the Supreme Court has already decided the appropriate standard for this particular error, and that standard is Watson. (*Lasko, supra*, 23 Cal.4th at p. 111.) The decisions of the California Supreme Court are binding on this court and we must follow them. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2.d 450, 455.) Accordingly, we review this instructional error under Watson.

---

[4] *People v. Watson* (1956) 46 Cal.2d 818 [conviction may be reversed only if "after an examination of the entire cause, including the evidence" it appears reasonably probable the defendant would have obtained a more favorable outcome had the error not occurred.] *(Id.* at p. 836.)

[5] *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705] [Where it cannot be stated beyond a reasonable doubt that the error complained of did not contribute to the verdict, the judgment must be reversed.]

---

We cannot say in the absence of the error, it is "reasonably probable" defendant would have obtained a more favorable result. Despite defendant's attempts to distinguish his case from *Lasko*, the *Lasko* court's reasoning that this error was harmless is compelling in this case.

The jurors in this case were specifically instructed - "Do not single out any particular sentence or any individual point or instruction and ignore the others. Consider the instructions as a whole and each in light of all the others." (CALJIC No. 1.01.) In addition, as in *Lasko*, the jurors were given other correct instructions "explaining the difference between murder and manslaughter." (*Lasko, supra*, 23 Cal.4th at p. 112.)

The instructions given in this case were virtually identical to those in Lasko. "[T]he jury was told that regardless of whether the killing of [Hinzman] was intentional *or unintentional*, defendant could not be convicted of murder

unless the prosecution proved that, at the time of the killing, defendant was not acting in the heat of passion [or under the unreasonable belief in the need for self-defense]." (*Lasko*, supra, 23 Cal.4th at p. 112, emphasis in original; *People v. Blakeley* (2000) 23 Cal.4th 82, 88-89. )[6]

---

[6] The jury was instructed that a person who kills in an unreasonable belief in the need to defend himself does not have the malice necessary for murder. (CALJIC No. 5.17.) They were also fully instructed that murder requires malice, as opposed to manslaughter where if the death is caused by heat of passion, under adequate provocation, or in imperfect self-defense, the crime is manslaughter. "In that case, even if an intent to kill exists, the law is that malice, which is an essential element of murder, is absent." (CALJIC No. 8.50.) Finally, the jury was instructed the burden was on the People to establish beyond a reasonable doubt each element of murder and that the killing was not caused in heat of passion, under adequate provocation, or in imperfect self-defense. (CALJIC No. 8.50.)

---

Defendant attempts to distinguish *Lasko* on the grounds the Supreme Court also noted "the subject of voluntary manslaughter did not figure prominently in either party's [closing] argument" and "the evidence strongly suggested an intent to kill."(*Lasko, supra*, 23 Cal.4th at p. 112.) By contrast, defendant contends, in this case the parties' closing arguments "gave repeated emphasis to the erroneous" voluntary manslaughter instruction, and "the evidence suggested the absence of intent to kill."[7] These are distinctions without a difference. (See *Blakeley, supra*, 23 Cal.4th at p. 94.)

---

[7] We observe, repeated emphasis of the error in this circumstance "could not have harmed defendant, because it increased the prosecution's evidentiary burden to prove defendant guilty of voluntary manslaughter." (*Blakeley, supra*, 23 Cal.4th at p. 94, fn. 5.)

---

Finally, defendant contends the instructional error was prejudicial because the jury could have found defendant acted in the heat of passion or imperfect self-defense, but would have rejected voluntary manslaughter because it required intent, and then rejected involuntary manslaughter because it "did not fit a case of implied malice."

We reject this rank speculation. *Watson* "requires a reasonable probability, not a mere theoretical possibility, that the instructional error affected the outcome of the trial." (*Blakeley, supra*, 23 Cal.4th at p. 94, emphasis in original.) Further, defendant's argument is not only entirely speculative, it is inherently illogical.

For this argument to demonstrate prejudice, we would have to accept the premise which must underlie it, but which defendant does not aver. That premise is: the jury would follow the instructions given, reject the lesser offenses of voluntary manslaughter (because there was no intent) and involuntary manslaughter (because there was no malice aforethought),[8] and then would

disregard the instructions completely and convict defendant of the greater offense of murder. This murder conviction would come, despite the jury's previous findings there was neither malice aforethought or intent. Simply stating the premise demonstrates its flaws and explains why defendant did not articulate it.

---

[8] The existence of heat of passion and/or unreasonable self-defense reduces murder to manslaughter because it abrogates the existence of malice, not intent. *(Lasko, supra,* 23 Cal.4th at p. 109; *Blakeley, supra,* 23 Cal.4th at p. 88.) Involuntary manslaughter requires neither malice nor intent.

---

Under the instructions given, if the jury found defendant acted in the heat of passion or unreasonable self-defense, it would have concluded it was compelled to acquit him of murder, because of the absence of malice. If the jury went on to find defendant did not act with the intent to kill, it would have concluded it was required to acquit him of voluntary manslaughter. (See *Lasko, supra,* 23 Cal.4th at p. 112; *Blakely , supra,* 23 Cal.4th at pp. 93-94.) Thus, under any scenario in which the jury believed defendant killed Hinzrnan unintentionally, the most the jury would have convicted defendant of was involuntary manslaughter, on which the jury was also instructed.

"Instead, the jury convicted defendant of second degree murder, showing that [irrespective of whether it found intent] . . . it did not believe the killing was committed in the heat of passion [or unreasonable self-defense]." *(Lasko, supra,*23 Cal.4th at p. 112; see also *Blakeley, supra,* 23 Cal.4th at p. 94.) Under these circumstances, it is not reasonably probable the instructional error affected the outcome of the trial. (*Watson, supra,* 46 Cal.2d at p. 836.)

Without citation to authority, Petitioner claims the erroneous instruction denied him due process of law. Respondent argues first that because the Sacramento Superior Court denied this claim in the first state habeas petition, Petitioner is procedurally barred from raising it before this Court. This argument fails. There is no question but that Petitioner properly raised this claim on direct appeal to the California Court of Appeal; consequently, the fact that the California courts in a subsequent state habeas proceeding denied the same claim does not procedurally bar consideration in a federal habeas proceeding.

The critical threshold issue unaddressed by the parties is whether Claim 4 presents a federal question. It is true that due process and the Sixth Amendment to the Constitution require that a jury be correctly instructed as to every element of the crime with which a defendant is charged and convicted, *see United States v. Gaudin*, 515 U.S. 506, 522–23 (1995), that is not the issue before this Court. The issue before this Court is whether due process requires that a jury in

a criminal trial be correctly instructed as to all necessarily included lesser offenses. First, Supreme Court precedent does not require a trial court to instruct the jury on a lesser included offense in a non-capital case, *Beck v. Alabama,* 447 U.S. 625, 638 (1980), and the Ninth Circuit has concluded that such a claim is not cognizable on federal habeas review. *Solis v. Garcia,* 219 F.3d 922, 929 (9th Cir.2000); *see also* 28 U.S.C. § 2254(d)(1); *Brewer v. Hall,* 378 F.3d 952, 955 (9th Cir.2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law."). It follows, *a fortiori*, that if a failure to instruct on lesser included charges at all does not present a federal issue, a failure to instruct on them correctly also does not present a federal issue.

Second, the California Court of Appeal, compelled as it was to follow the decision of the California Supreme Court, applied the California rule under *People v. Watson*, not the federal standard under *Chapman v. California*, 386 U.S. 18 (1967). Thus, the question becomes whether *Lasko*, was decided solely under principles of state law or whether it was intertwined with a federal issue. If *Lasko* was decided solely under California law, no federal question is presented and review of state law questions is beyond the purview of this Court.

It is clear from the opinion in *Lasko* that it decided the question of propriety of the instruction in question solely under California law.[6] *See also People v. Breverman*, 960 P.2d 1094, 1108 (1998) (holding that the failure to instruct on a lesser included offense in a noncapital case is, at most, an error of California law alone subject only to state standards of reversibility). When state standards alone have been violated and no federal constitutional violation appears, the State is free to apply its own state harmless-error rule to those violations without review by a federal court. *Cooper v. State of California*, 386 U.S. 58, 62 (1967).

This Court can not say that the decision of the California Supreme Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the

---

[6] The defendant in *Lasko* did raise federal constitutional issues of denial of a trial by jury and due process based on the dissenting opinion in *Breverman*. The decision of the California Supreme Court summarily rejected Defendant's argument without discussion, instead relying solely upon its interpretation of the requirements of California law.

MEMORANDUM DECISION
*Judd v. LaMarque*, 2:02-cv-01083-JKS           15

facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the California Supreme Court unreasonably applied the correct legal principle to the facts of the prisoner's case as required by *Lockyer–Williams*; *i.e*., the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Petitioner is not entitled to relief under Claim 4.

Accordingly, because Petitioner is not entitled to relief under any claim asserted,

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)).  All federal constitutional issues properly raised in the petition were either addressed by the California Court of Appeal in its decision, the California Superior Court on the first round of state habeas petitions, or deemed addressed by the California Supreme Court in denying Petitioner's second petition for habeas relief before that court and no reasonable jurist could find that those decisions were "objectively unreasonable."

The Clerk of the Court shall enter final judgment accordingly.

Dated:  March 22, 2007.

                                                              s/ James K. Singleton, Jr.
                                                              JAMES K. SINGLETON, JR.
                                                              United States District Judge